# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR411-059 |
| | ) |
| SAMUEL ANTONIO GRAHAM | ) |

## REPORT AND RECOMMENDATION

Samuel Antonio Graham, charged with possession with intent to distribute crack cocaine, doc. 1, moves this Court to suppress the government's evidence against him. Doc. 15. He argues that

> [t]he charge is based solely on evidence collected when the police executed a no-knock search of Mr. Graham's residence pursuant to an Affidavit that identified another, unknown individual who purchased drugs. The Affidavit also failed to identify the specific apartment from which [an] unknown individual [was] selling drugs. Because the Affidavit did not identify Mr. Graham as the seller of the drugs or involved in any way in the drug transaction and did not identify which apartment the controlled purchase occurred, the warrant lacked probable cause, and the evidence discovered in the execution of the search warrant should be suppressed.

*Id.* at 1.

Opposing, the government insists that (a) because Graham waived his Fourth Amendment rights as a condition of his probation from an earlier, state-court sentence, only reasonable suspicion need be shown to

search Graham's apartment[1]; (b) even if probable cause (and thus a judicial officer's approval) were required, it existed, and the search warrant affidavit's defects were non-fatal, "cut-and-paste" errors; (c) even if the search warrant suffers from fatal flaws, the executing officers acted in good faith, per *United States v. Leon*, 468 U.S. 897, 919 (1984), so the search nevertheless survives Fourth Amendment scrutiny; and (d) Graham lacks standing because he held no expectation of privacy that society would deem legitimate.[2] Doc. 18 at 3-9.

## A. Probation Waiver

It is undisputed that, as a condition of his probation from a prior conviction, Graham agreed to waive his Fourth Amendment rights. Doc. 15-5 at 2. Graham insists that his Fourth Amendment probation waiver does not preclude his challenge here, for the government lacked the necessary reasonable suspicion to justify the search. Doc. 15 at 7-8.

---

[1] Through an oversight, according to the government, this argument was not raised in its brief, but it was raised at the subsequent evidentiary hearing.

[2] At the evidentiary hearing the government conceded that Graham resided at the searched apartment, so he has standing in that sense to challenge the search. But, as will be further discussed *infra*, a defendant who has been granted probation on condition that he submit at any time to a warrantless search forfeits his traditional Fourth Amendment protection.

2

A probationer subject to a warrantless search condition may be stopped and searched, and even have his residence searched, if reasonable suspicion exists to believe that criminal activity may be occurring. *See United States v. Knights*, 534 U.S. 112, 121 (2001) ("no more than reasonable suspicion" is necessary to search the home of probationer with a search condition); *United States v. Boynton*, 337 F. App'x 801, 803 (11th Cir. 2009) (police officers' warrantless search of residence of defendant, who had agreed to a term of probation that subjected him to warrantless searches of his place of residence, was reasonable, and thus did not violate defendant's Fourth Amendment rights, where information acquired by officers gave them reason to suspect that defendant was trafficking in cocaine); *United States v. Walley*, 271 F. App'x 966, 968 (11th Cir. 2008) (probation officer had reasonable suspicion to search probationer's home, where officer had been informed that probationer and his wife had been arrested for possession of marijuana, the very same contraband that he was on probation for distributing).[3]

---

[3] The *Knights* Court, however, did "not decide whether the probation condition so diminished, or completely eliminated, Knights' reasonable expectation of privacy . . .

Here Graham, as a condition of his probation, agreed in writing "to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, *with or without a search warrant and with or without cause.*" Doc. 15-5 at 2 (emphasis added). He was still under a state court sentence when he signed that Fourth Amendment waiver in exchange for release from physical custody. *Id.* And the State obviously retained a special interest in closely monitoring him -- *because* he was still in legal (just not physical) custody.

Based upon the terms of that waiver, Graham disclaimed any expectation of privacy that society would recognize as legitimate. Some

---

that a search by a law enforcement officer without any individualized suspicion would have satisfied the reasonableness requirement of the Fourth Amendment." *Knights*, 534 U.S. at 120 n. 6 (emphasis added). The search there was predicated on both the probation search condition and reasonable suspicion, so there was no need to decide "whether the search would have been reasonable under the Fourth Amendment had it been solely predicated upon the condition of probation." *Samson v. California*, 547 U.S. 843, 850 (2006). *Samson*, which addressed waivers for *parolees*, went a step farther. It noted that under California law, "every prisoner eligible for release on state parole 'shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause.'" The *Samson* Court concluded that such a suspicionless search does not violate the Constitution. *Id.* at 846. The Court noted, however, that parole was more akin to imprisonment than probation on the "continuum" of state-imposed punishments. *Id.* at 850. Despite this language, the Ninth Circuit, at least, has concluded "that there is no constitutional difference between probation and parole for purposes of the Fourth Amendment." *Sanchez v. Canales*, 574 F.3d 1169, 1174 n. 3 (9th Cir. 2009) (quotes and cite omitted).

courts have held that under such a waiver no level of suspicion is necessary to justify a search. *See Sanchez*, 574 F.3d at 1174. But even if reasonable suspicion was required here, the officers were justified in searching Graham's apartment since they possessed *probable cause* -- not just reasonable suspicion -- to believe that he was distributing drugs from that location. As the government established at the suppression hearing, an officer personally witnessed a confidential informant purchase drugs from Graham at the apartment. This observation, coupled with other information from the informant that Graham regularly sold drugs from his apartment, clearly established probable cause to search the apartment.

**B. Particularity Challenge**

Even if waiver did not apply, Graham's motion -- as premised on "particularity" errors -- would still have to be denied. The standard here, of course, is the Fourth Amendment itself. No warrants shall issue except those *"particularly* describing the place to be searched and the person or things to be seized," U.S. Const. amend. IV (emphasis added); *Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (residential search conducted pursuant to facially invalid search warrant, which utterly failed to

5

describe the persons or things to be seized, could not be regarded as "reasonable" for Fourth Amendment purposes, though items to be seized were described in search warrant application, and though officers conducting search exercised restraint in limiting scope of search to that indicated in application); *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir. 1986); *United States v. Glenn*, 2009 WL 2390353 at *2-3 (S.D. Ga. Jul. 29, 2009) (invalidating a search based on an "essentially blank warrant"). But a search warrant need not be "technically accurate in every detail," *United States v. Prout*, 526 F.2d 380, 387 (5th Cir. 1976), or achieve "the specificity sought by conveyancers." *Burke*, 784 F.2d at 1092; *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir. 1985). That means that a simple error in the description of the place to be searched does not necessarily invalidate a warrant and subsequent search. *Burke*, 784 F.2d at 1092; *Weinstein*, 762 F.2d at 1532. The warrant "need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." *Weinstein*, 762 F.2d at 1532.

For that matter, an officer's personal knowledge of the place to be searched is a significant factor which may be considered by a court in reviewing a particularity challenge. *Burke*, 784 F.2d at 1093; *Weinstein*, 762 F.2d at 1532-33. This is true "even where such knowledge was not reflected in the warrant or the affidavit supporting the warrant." *Burke*, 784 F.2d at 1093; *see* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.5(a) at 562 (4th ed. 2004). So if the warrant, despite its deficiencies, is sufficient to identify the correct property and steer a reasonable officer away from an incorrect property, it satisfies the Constitution.

The search warrant here directed the officers to the street address of Graham's two-story apartment building but failed to specify the apartment number or the floor on which the apartment was located. Graham complains about these omissions, which also afflict the search warrant affidavit, prepared by Savannah police officer Kevin J. Grogan. Doc. 15 at 2-4.

Graham is technically correct, but the affidavit *also* states that a check through local property records identified "apartment 3" as Graham's (though the warrant did not expressly incorporate the affidavit). Doc. 15-1 at 1. Additionally, the affidavit says that a

7

confidential informant (CI) pointed out "the residence" to Grogan as "the location where the CI would purchase crack cocaine." *Id.* Grogan also attached to his affidavit a photo with a large arrow pointing to the apartment. Finally, he himself (with another officer) executed the warrant with personal knowledge of which particular apartment Graham occupied. Grogan's fellow officer had personally witnessed a CI make a controlled purchase of illegal narcotics from Graham at that apartment. Though property records identified Graham's residence as "Apartment 3," Grogan omitted that reference from the search warrant description because none of the apartments in Graham's apartment complex had numbers on them.

Graham also cites two other errors: Because Grogan evidently recycled (cut-and-pasted) his work from another case involving one Antwan Cross, he also mistakenly left Cross's "Carr Avenue" address in the *Graham* search warrant. Doc. 18-1 at 4. However, the correct address (1302 Stiles Avenue) was noted in the warrant's main description. *Id.* And, Grogan mistakenly mentioned "Twan" (for Antwan Cross) in that portion of his affidavit referencing a prior,

controlled narcotics purchase from Graham. Doc. 15-1 at 2. He testified that he meant to type "Graham" but simply erred.

Grogan's testimony easily brought this case over the goal line. *See Burke*, 784 F.2d at 1092-93 (search warrant described premises to be searched with sufficient particularity to direct officers to correct apartment, to confine officers' examination to that apartment, and to place occupants on sufficient notice of officers' authority to search premises, although only correct information given in warrant was number of apartment to be searched, warrant had wrong building number, and named street did not exist in city in question, where warrant contained detailed physical description of building, minimizing possibility that an apartment in any building other than the correct one would be searched, and officer, who pointed out correct apartment to officer executing warrant, knew precisely which premises were to be searched); *United States v. Darensbourg*, 520 F.2d 985, 987 (5th Cir. 1975); *United States v. Murdock*, 2010 WL 5538514 at * 8 (S.D. Ga. Dec. 17, 2010), *adopted*, 2011 WL 43503 at * 3 (S.D. Ga. Jan. 6, 2011). Two warrant-executing officers personally knew the precise apartment to be searched, and one personally witnessed a CI buying drugs from Graham

at that apartment. They also saw (at other times) Graham sitting on a plastic bucket and a plastic chair directly in front of it. "On these facts, probable cause existed to support the search warrant because the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Gamory*, 635 F.3d 480, 491 (11th Cir. 2011). Given this result, it is not necessary to reach the government's remaining (*Leon*) argument.

Accordingly, the Court should **DENY** Samuel Antonio Graham's motion to suppress the evidence against him. Doc. 15.

**SO REPORTED AND RECOMMENDED** this 11*th* day of May, 2011.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA